***UNITED STATES DISTRICT COURT***
***DISTRICT OF MAINE***

| | | |
|---|---|---|
| ***UNITED STATES OF AMERICA*** | *)* | |
| | *)* | |
| ***v.*** | *)* | ***Criminal No. 08-96-P-H*** |
| | *)* | |
| ***DENIZ NOVO,*** | *)* | |
| ***a/k/a Wanda Martinez,*** | *)* | |
| | *)* | |
| ***Defendant*** | *)* | |

***RECOMMENDED DECISION ON MOTION TO SUPPRESS***

The defendant, Deniz Novo, a/k/a Wanda Martinez, charged in an indictment with social security fraud, identification document fraud, and aggravated identity theft, in violation of 42 U.S.C. §408(a)(7)(B) and 18 U.S.C. §§ 1028(a)(7) and 1028A(a)(1), Indictment (Docket No. 3), moves to suppress an identification of her by James Kamau as a result of a photographic array. Motion to Suppress Evidence ("Motion") (Docket No. 22) at 2. I recommend that the motion be denied.

**I. Factual Background**[1]

In January 2008, Kamau pleaded guilty to aggravated identity theft. *United States v. James Kamau*, Criminal No. 07-108-P-H, Docket No. 20. As part of his plea agreement, Kamau agreed to tell the government "fully . . . and completely" all that he knew about the involvement of others in the violations of law for which he was indicted. Agreement to Plead Guilty and Cooperate (Docket No. 19 in Criminal No. 07-108-P-H) at 3. As part of his cooperation, Kamau told investigators that he sold identity documents to a "Denise DeSilva" who lived in an apartment building near Dartmouth Street in Malden, Massachusetts, possibly on the fourth

[1] No evidentiary hearing was sought or held with respect to this motion.

floor. Government's Opposition to Defendant's Motion to Suppress Evidence ("Opposition") (Docket No. 27) at 1. Kamau stated that "Denise" had purchased documents from him that she used to obtain a Maine identification card in the name of "Yolanda" with a last name that he could not recall. *Id*. at 2. He further stated that he had accompanied "Denise" to a Maine Bureau of Motor Vehicles office to obtain the identification card. *Id*. He also stated that "Denise" had obtained another identification at a Massachusetts Registry of Motor Vehicles and that he had accompanied her to a car dealership in Massachusetts where she purchased a Mercedes using the identity of Wanda Martinez. *Id*.

Telephone records for the telephone number given for "Denise DeSilva" by Kamau indicated that the billing name on the account was Deniz Novo, with a fourth-floor apartment address on Dartmouth Street in Malden, Massachusetts. *Id*. Investigators obtained from the respective motor vehicle registries a Massachusetts driver's license in the name of Deniz Novo issued on December 26, 2001; a Massachusetts driver's license in the name of Wanda Martinez issued on September 13, 2006; a photograph from a Maine identification card dated May 26, 2006, in the name of Wanda Martinez; and a booking photograph of the defendant, in the name of Wanda Martinez, from her arrest for operating a motor vehicle without a license on August 23, 2006. Motion at 1-2. The photographs all appeared to be of the same person. *Id*. at 2; Opposition at 2-3.

A special agent of the Bureau of Diplomatic Security of the U. S. Department of State prepared a photographic array to show to Kamau. Opposition at 3. He used the Massachusetts driver's license photograph of the defendant and photographs of five other females. *Id*. The array is Exhibit A to the defendant's motion. The defendant's photograph is in the middle of the lower of two rows of three photographs each.

On May 2, 2008, the investigator presented the array to Kamau at a correctional facility. Motion at 2. The agent told Kamau that he wanted to see if the person Kamau knew as Denise DeSilva was depicted in any of the photographs. Opposition at 4. Kamau identified the individual depicted in the left-most photograph in the top row as "Denise." *Id.* He was then asked whether he recognized any of the other pictured individuals. *Id.* He considered each photograph in sequence, and when he came to the defendant's photograph, Kamau said that he had been mistaken and that the defendant's photograph depicted "Denise." *Id.* After Kamau had examined all of the photographs,[2] the agent asked him if he recognized the individual he had first identified as "Denise." *Id.* Kamau responded that he did not, and again identified the defendant's photograph as depicting "Denise." *Id.*

Kamau was then shown the Boston Police Department booking photograph of "Wanda Martinez" and identified the person depicted in that photograph as "Denise." *Id.*

## II. Discussion

The defendant contends that the photographic array was impermissibly suggestive. Motion at 3-5. Specifically, she asserts that the following characteristics of the photograph used "suggest[ed] to Mr. Kamau that the photograph of Defendant was taken under different circumstances than the others and would therefore draw his attention:" the photograph

> 1) depicts her as having a very red complexion as compared to the natural appearance of the women in the other photographs; 2) is blurred as compared to the other photographs; [3)] has a much larger background and [4)] is taken from a greater distance than the photographs of the other women in the photo array.

[2] The handwritten notation under the defendant's photograph on Exhibit A was added by the agent after Kamau made the identification. Opposition at 4.

*Id*. at 4.[3] The plaintiff also asserts that the fact that "only" six photographs were used in the array is a factor that must be considered as weighing in favor of a finding of impermissible suggestiveness. *Id*. at 4.

As the First Circuit has made clear:

> Pretrial identification evidence is subject to constitutional limitations under the Due Process Clause. We employ a two-pronged analysis to determine whether evidence of a pretrial identification should be suppressed. First, the court must determine whether the procedure was impermissibly suggestive. If so, then the court must decide whether the identification itself was reliable under the totality of the circumstances, notwithstanding the suggestive procedure. The likelihood of misidentification must be very strong in order to suppress the evidence.

*United States v. Lopez-Lopez*, 282 F.3d 1, 10-11 (1st Cir. 2002) (citations omitted). The defendant bears the burden of showing that a photographic array was impermissibly suggestive. *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005); *United States v. Martin*, 391 F.3d 949, 952 (8th Cir. 2005); *United States v. Gray*, 958 F.2d 9, 14 (1st Cir. 1992). Only if the defendant carries that burden must the court go on to consider whether the identification was reliable notwithstanding the suggestiveness of the procedure. *See, e.g., Martin*, 391 F.3d at 952; *United States v. Beverly*, 369 F.3d 516, 538 (6th Cir. 2004).

"A court should exclude an out-of-court identification based on a photo array only in those extraordinary cases where there is a very substantial likelihood of irreparable misidentification, a situation which could result in an unfair trial in violation of the defendant's due process rights." *United States v. DeCologero*, 530 F.3d 36, 61 (1st Cir. 2008) (citation and internal punctuation omitted).

[3] The defendant also contends that "if Mr. Kamau was shown just the booking photo of Defendant first and then shown the photo array, the identification in the photo array would clearly have been based upon an impermissibly suggestive procedure." Motion at 4. The government's presentation makes clear that the booking photograph was shown to Kamau only after he had finished looking at the photographic array.

Taking the last factor cited by the defendant first, the First Circuit has long deemed a six-person photographic array to be adequate. *United States v. Maguire*, 918 F.2d 254, 265 (1st Cir. 1990). The other factors cited by the defendant – that the photograph of the defendant was blurred, was taken from a greater distance and with a larger background than the other photographs in the array, and showed her "as having a very red complexion as compared to the natural appearance of the women in the other photographs" – considered individually or together, do not render the array impermissibly suggestive. There is some variation in focus, proximity, and photographic tint and background among several of the photographs.

Relatively minor differences in backgrounds and/or physical characteristics do not suffice to support the defendant's position. *See, e.g., United States v. Adeniyi*, No. 03 CR. 0086(LTS), 2003 WL 21146621, at *2 (S.D.N.Y. May 14, 2003) ("Even if there are some physical differences, a photo-array will not be suggestive as long as the other pictures sufficiently resembled the defendant to allay any concern that the witnesses might have been unfairly influenced in their selection of him by any of the noted physical differences between him and the others.")(citation and internal punctuation omitted); *see also, e.g., United States v. Malveaux*, No. 98-50669, 2000 WL 125917, at *1 (9th Cir. Jan. 18, 2000) (rejecting defendant's contention that array unduly suggestive because he was only suspect who was bald and in mid-twenties and his photo was placed in center of page; concluding that "such insubstantial differences do not in themselves create an impermissible suggestion"); *United States v. Donaldson*, 978 F.2d 381, 384-85, 387 (7th Cir. 1992) (rejecting defendant's assertion that array unduly suggestive because he was only person with receding hairline and only light-skinned black male who was not clean-shaven except for mustaches; concluding that array contained photos of men of similar age and appearance); *Mitchell v. Goldsmith*, 878 F.2d 319, 323 (9th Cir. 1989) (rejecting appellant's

argument that array was unduly suggestive inasmuch as (i) he was only person photographed against blue background, (ii) four of seven individuals depicted had lighter complexions and (iii) his was only photo with 1981 date; agreeing with district court that background colors varied among pictures, dates were not suggestive, and at least two other men in lineup closely resembled appellant); *Adeniyi*, 2003 WL 21146621, at *2 (rejecting defendant's argument that array unduly suggestive inasmuch, *inter alia*, as he was only bald person depicted; concluding, "Hairlines, hair length, and baldness patterns vary somewhat among the pictures. Defendant's picture suggests that his hair might be cut a bit shorter than that of the others, particularly on the sides, but he does not stand out as a bald person in the company of the hirsute. The other individuals depicted, like the Defendant, all have moustache/goatee facial hair to some degree.").

The same result obtains even if the court were to consider the additional factors belatedly advanced in the defendant's reply memorandum. There, she asserts that she is the only one of the six women pictured who has "both a medium complexion and blond hair." Reply to the Government's Opposition to Defendant's Motion to Suppress (Docket No. 28) at 1. I disagree with this characterization of the array. One of the women depicted appears to have hair of approximately the same color as the defendant and two or three of them have a "medium" complexion. That similarity is sufficient to render this argument unavailing.

In her reply, the plaintiff also refines her argument, asserting that the alleged blurriness of her photograph and the distortion of the color of her skin "suggests her photograph was taken at a different time and under different circumstances from the others and thus singles it out." *Id*. at 2. I am aware of no legal requirement, and the defendant has cited none, that mandates that all photographs used in an identification array be taken at the same time and under the same circumstances, or that the array must avoid the possibility of an observer reaching the opposite

conclusion. Indeed, the fact that the photograph of the defendant and the one in the upper left-hand corner of the array appear to have identical blue backgrounds, and the fact that the other four photographs have different backgrounds from each other, controvert the premise on which the defendant bases her argument.

The defendant's arguments, at most, suggest bases on which she may challenge the evidentiary value of Kamau's identification of her from the photographic array, if that identification is used at trial. The defendant has not carried her burden to show that there is a substantial likelihood that the use of the photographic array in this case was impermissibly suggestive. Accordingly, it is not necessary to consider whether Kamau's identification of her photograph was reliable even had the array been unduly suggestive.

## III. Conclusion

For the foregoing reasons, I recommend that the defendant's motion to suppress be **DENIED.**

## ***NOTICE***

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 19th day of September, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge